UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BERRY PERKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:20 CV 1663 RWS |
| ) | |
| R.J. REYNOLDS TOBACCO CO., ) | |
| et al., ) | |
| Defendants. ) | |

# MEMORANDUM & ORDER

This case is before me on Defendant R.J. Reynolds Tobacco Co.'s, motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative a more definite statement under Fed. R. Civ. P. 12(e). ECF No. [11]. Plaintiff Barry Perkins brings claims for strict products liability, fraud, and negligence. ECF No. [1-1]. For the reasons set forth below, I will grant in part and deny in part Defendant's motion.

## BACKGROUND

Plaintiff initially filed a Petition in the 22nd Judicial Circuit Court for the City of St. Louis, Missouri on August 23, 2020, alleging that he developed bladder cancer as the result of smoking cigarettes manufactured by Defendant R.J. Reynolds and sold by Defendant Schnuck Markets. Plaintiff brought claims for strict products liability, negligent design, fraudulent concealment, and concealment

fraud conspiracy against Defendant R.J. Reynolds. Plaintiff brought a single claim for strict products liability against Defendant Schnuck Markets.

Defendant R.J. Reynolds, relying on diversity jurisdiction under 28 U.S.C. § 1332, removed the case to the federal court on November 25, 2020. Although Schnuck Markets is a resident of Missouri, R.J. Reynolds argued that complete diversity still existed because Schnuck Markets was fraudulently joined. I denied the Plaintiff's motion to remand and dismissed Schnucks as a defendant on December 18, 2020. Plaintiff then notified the Court that a motion to consolidate was filed in the related case, Eugene Ford v. R.J. Reynolds Tobacco Co., Case No. 4:20-cv-1551-HEA. The motion was denied on June 28, 2021. Therefore, Reynolds's motion to dismiss, which was filed prior to the motion to remand, is now ready for consideration.

## STATEMENT OF FACTS

Perkins began smoking in 1962 at the age of 13. He primarily smoked Kool cigarettes, which are designed, manufactured, and sold by Brown and Williamson (B & W) and R.J. Reynolds. By the late-1960's Perkins was a regular smoker, smoking between 1and 2 packs per day. Perkins tried to quit but was unsuccessful, so he remains a regular smoker to this day. The Kool cigarettes he smoked contained flue cured tobacco, menthol, and nicotine, which all contributed to their

dangerous and addictive nature. In 2019, Perkin's was diagnosed with bladder cancer, which he alleges was caused by his smoking.

When Perkins began smoking, he was aware of the Marlboro Man and knew that "if you wanted to be cool, you smoked a Kool." And throughout his years of smoking, Perkins saw print, television, and radio ads that influenced his decision to continue smoking. He also heard and read about public statements made by the tobacco industry, including R.J. Reynolds and B & W, denying that smoking caused cancer or other rare diseases. The tobacco industry made these statements despite the fact that cigarettes contain potentially dangerous ingredients. Perkins now claims that the public statements and advertisements made by the cigarette industry caused confusion and lead to his belief that cigarettes were not yet proven to cause cancer and other serious illness. This belief influenced Perkin's decision to continue smoking and ultimately led to his cancer diagnosis.

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. When considering a Rule 12(b)(6) motion, I must assume the factual allegations of the complaint to be true and construe them in favor of the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326–27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). I am not, however, bound to accept as true a legal conclusion couched as a factual

allegation. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570). Although "specific facts are not necessary," the plaintiff must allege facts sufficient to "give fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562. This standard "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556. The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim." Twombly, 550 U.S. at 556.

4

# DISCUSSION

Defendant argues that Plaintiff's claims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). First Defendant argues Plaintiff's design defect claims are impliedly preempted or in the alternative fail to state a claim because they do not identify a specific design defect, but rather rely on the fact that all cigarettes are harmful. Next, Defendant argues Plaintiff's fraud claims must be dismissed because they are merely refashioned failure to warn claims which are preempted by the Federal Cigarette Labelling and Advertising Act.

COUNTS I AND III  (DESIGN DEFECT AND NEGLIGENT DESIGN)

*Preemption*

In Count I and II, Plaintiff alleges that the cigarettes designed and manufactured by the defendants and their predecessors in interest were in an unreasonably dangerous and defective condition to users. Plaintiff specifically alleges that the use of flue-cured tobacco and manipulation of the amount of nicotine in the cigarettes were design choices that rendered the cigarettes unreasonably dangerous. Defendant, relying on Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000),  argues that these claims are preempted because the United States Supreme Court has recognized that cigarettes are a legal product and a "ban on tobacco products would plainly contradict congressional policy." Brown & Williamson,

529 U.S. at 139. Plaintiff challenges Defendant's characterization of his claim, arguing that his claim attacks specific design choices rather than cigarettes more generally and therefore would not result in a functional ban of cigarettes as contemplated in Brown & Williamson. Plaintiff also argues that regardless of the characterization of the claims, they are not preempted. He relies, in part on Graham v. R.J. Reynolds Tobacco Company, 857 F.3d. 1169, 1190 (11th Cir. 2017), which emphasized that Brown & Williamson, did not address the states' power to regulate tobacco or preemption.

Plaintiff's design defect claims are not preempted. The issue in Brown & Williamson, was whether the Food and Drug Administration had authority under the Food, Drug, and Cosmetic Act, to regulate tobacco products. Brown & Williamson, 529 U.S. 120. The Supreme Court analyzed the history of tobacco legislation and the implications of FDA regulation and concluded that regulation by the FDA would require it to ban the sale of tobacco, which would contradict congressional intent to allow its sale but inform consumers of the risk. Brown & Williamson, 529 U.S. at 137. The Court did not address whether states could ban tobacco and did not consider the issue of state sovereignty. Since Brown & Williamson was decided in 2000, some courts have determined that design defect claims that would result in functional bans on tobacco products are preempted based on the Supreme Court's interpretation of congressional intent in Brown &

6

Williamson. But others have not. In 2009, the Ninth Circuit indicated in dicta that such preemption is unwarranted. The Ninth Circuit stated in Hunter v. Phillip Morris USA that the plaintiff's product liability claim did not "present an obstacle to the congressional policy concerning the regulation of tobacco." Hunter v. Philip Morris USA, 582 F.3d 1039, 1048 (9th Cir. 2009). The Ninth Circuit noted that since the Supreme Court issued its decision in Brown & Williamson, Congress had repealed the provision of the Agricultural Adjustment Act of 1938 that had articulated a federal policy in support of the sale of tobacco. Id. In 2017, the Eleventh Circuit, in an en banc decision, "conclude[d] that federal tobacco laws do not preempt state tort claims based on the dangerousness of all the cigarettes manufactured by the tobacco companies." Graham v. R.J. Reynolds Tobacco Co., 857 F.3d 1169, 1186 (11th Cir. 2017). In its decision the Eleventh Circuit noted that a state "may employ its police power to regulate cigarette sales and to impose tort liability on cigarette manufacturers" unless there is a "clear and manifest purpose of Congress" to supersede such "historic police power." Graham, 857 F.3d at 1191. It also examined laws related to tobacco regulation and determined that there was no indication that "Congress created a regulatory scheme that does not tolerate tort liability based on the dangerousness of all cigarettes manufactured by the tobacco companies but tolerates tort actions based on theories with a more limited scope. Id. at 1188.

I find the reasoning in Graham persuasive. When considering preemptions, Courts begin "with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Altria Grp., Inc. v. Good, 555 U.S. 70, 77, 129 S. Ct. 538, 172 L. Ed. 2d 398 (2008). Here, Defendant asks me to find that state law is impliedly preempted because it conflicts with Congress's clear policy in favor of the sale of cigarettes. But in 2004, Congress repealed the provision of the Agricultural Adjustment Act of 1938 that had articulated federal policy in support of the marketing of tobacco. See American Jobs Creation Act of 2004, PL 108–357, October 22, 2004, 118 Stat 1418, Fair and Equitable Tobacco Reform Act § 611(a). As discussed in detail in Graham, the statement of purpose in the Labeling Act, 15 U.S.C. § 1331, does not reflect a federal objective to preserve cigarette sales. Graham, 857 F.3d at1187-88. Additionally, the enforcement of state products liability laws does not create an obstacle to the accomplishment and execution of the purposes and objectives of Congress. Graham, 857 F.3d at1187-88.

Additionally, even if the logic in Brown & Williamson applied, the Plaintiff's design defect claim would not result in a functional ban on cigarettes. Defendant argues that the Plaintiff's claim based on flue cured tobacco, nicotine manipulation, and the addition of flavors apply to all cigarettes, but the Plaintiff is challenging specific design choices regarding flavor additions and nicotine levels.

8

See McCracken v. R.J. Reynolds Tobacco Co., No. CV 17-4495, 2018 WL 2304041, at *5–6 (E.D. Pa. May 21, 2018); Bougopoulos v. Altria Grp., Inc., 954 F. Supp. 2d 54, 61 (D.N.H. 2013). Additionally, for his design defect claim to succeed, Plaintiff must also establish causation. Therefore, "[s]tate common law only affords a remedy to individuals who can establish that tobacco products rather than their own negligence or disregard of the inherent risks of tobacco caused them to suffer injuries." Richardson v. R.J. Reynolds Tobacco Co., 578 F. Supp. 2d 1073, 1078 (E.D. Wis. 2008).

Therefore, I conclude that federal law does not impliedly preempt plaintiff's claims. Defendant's arguments are insufficient to overcome the presumption against preemption and the principle that courts should read a federal statute as preempting state law only if Congress clearly indicates an intention to do so.

*Failure to State a Design Defect Claim Under Missouri Law*

The Plaintiffs state a claim for strict products liability under Missouri Law. Defendant argues that Plaintiff fails to state a claim for a design defect under both the strict products liability and negligent design theories because he did not plead a specific design flaw or causation and because he failed to meet the basic pleading standards under Fed. R. Civ. P. 8. But as discussed earlier, Plaintiff specifically alleged design defects based on nicotine manipulation and the use of additive flavors to make the cigarettes more addictive and easier to smoke.

9

Under Missouri law, "[a] manufacturer is liable under a strict liability product defect claim "if the product was in an unreasonably dangerous defective condition when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." Smith v. Brown & Williamson Tobacco Corp., 275 S.W.3d 748, 791 (Mo. Ct. App. 2008) (quoting Richcreek v. Gen. Motors Corp., 908 S.W.2d 772, 775 (Mo. Ct. App. 1995); § 537.760. To prove a claim of strict products liability for defective design, a plaintiff must prove that "(1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) plaintiff was damaged as a direct result of the defective condition that existed when the product was sold." Engel v. Corrigan Co.-Mech. Contractors, Inc., a Div. of Corrigan Bros., Inc., 148 S.W.3d 28, 30 (Mo. Ct. App. 2004) (citation omitted). "The core concern in strict tort liability law is safety. Therefore, the primary inquiry in a design defect case is whether the product—because of the way it is designed—creates an unreasonable risk of danger to the consumer or user when put to normal use." Nesselrode v. Exec. Beechcraft, Inc., 707 S.W.2d 371, 375 (Mo. 1986) (internal citations removed). And in Missouri, "the concept of unreasonable danger, which is determinative of

whether a product is defective in a design case, is presented to the jury as an ultimate issue without further definition." Id.

Here Plaintiff alleged that Defendant manipulated the amount of nicotine and used added flavors to make the cigarettes more addictive and easier to inhale. This is sufficient at this stage to state a claim for design defect. Therefore, the Defendant's motion as to Counts I and III will be denied.

COUNTS II (FAILURE TO WARN)

In Count II Plaintiff alleges that prior to 1969, the cigarettes he purchased did not warn users of their dangerous or addictive nature. Plaintiff claims that Defendant's failure to warn of the dangers influenced his decision to start smoking and his eventual addiction to cigarettes and diagnosis with bladder cancer. In Missouri, to state a claim for strict liability failure to warn, the plaintiff must allege that "(1) the defendant sold the product in question in the course of its business; (2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics; (3) the defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) the plaintiff was damaged as a direct result of the product being sold without an adequate warning." Moore v. Ford Motor Co., 332 S.W.3d 749, 756 (Mo. 2011)(citing Tune v. Synergy Gas Corp., 883 S.W.2d 10, 13 (Mo. 1994)). Defendant does not dispute that Plaintiff provided sufficient

11

allegations to plausibly establish the first four element, but Defendant argues that Plaintiff did not plead facts to establish that his bladder cancer was caused by Defendant's failure to warn. In particular Defendant argues that Plaintiff's decision to continue smoking after warnings were added to cigarette packaging belies any claim that an adequate warning would have influenced his decision to start smoking in the first place.

There are two aspects to proving causation in failure to warn cases. Id. at 761. First, Plaintiff must establish cause in fact by showing the product in question caused the Plaintiff's injury. Id. Second, Plaintiff must establish proximate cause. In order to establish proximate cause in a failure to warn case, the "plaintiff[] must show that a warning would have altered the behavior of the individual[]…" Id. In Missouri, courts aid plaintiffs by presuming that a warning will be heeded. Id. This presumption assumes that a reasonable individual will act accordingly when given adequate information. Id.

In this case, Plaintiff alleges that he began smoking at the age of 13, Cmpl. ¶ 70, prior to the passage of the Federal Cigarette Labelling Act. Federal Cigarette Labeling and Advertising Act, Pub. L. No. 89-92, 79 Stat. 282. Additionally, Plaintiff alleges that had there been a warning, more likely than not he would not have begun smoking. Cmpl. ¶ 79. He also alleged that he attempted to quit but failed. Cmpl. ¶ 73. Defendant argues that Plaintiff's decision to continue smoking

12

for 50 years after warning labels were affixed to cigarette packaging, rebuts the presumptions that Plaintiff would have heeded the warning. But this ignores the addictive nature of cigarettes and Plaintiff's alleged attempts to quit smoking. See Smith, 275 S.W.3d at 788–89. At this stage Plaintiff has made sufficient allegations to state a claim for failure to warn prior to 1969. Therefore, Defendant's motion will be denied as to this claim.

COUNTS IV AND V (FRAUD)

In Count IV, Plaintiff alleges that Defendant fraudulently concealed information that Defendant had a duty to disclose, and in Count V, Plaintiff alleges that Defendant conspired with other cigarette manufacturers and the Tobacco Institute and Counsel for Tobacco Research to conceal material information from consumers. Defendant argues that Plaintiff's fraud claims are repackaged failure to warn claims and therefore are preempted by the Federal Cigarette Labeling and Advertising Act. Defendant also argues that it did not have a duty to disclose, and that Plaintiff's fraud claims are time-barred and fail to meet the heightened pleading standard under Fed. R. Civ. P. 9(b). Plaintiff argues that his claims are not based on a "duty 'based on smoking and health,'" but on a duty not to deceive or commit fraud and therefore are not preempted. He also argues that his claim satisfies Fed. R. Civ. P. 9(b).

*Preemption*

Plaintiff's claims for fraudulent concealment and fraud concealment conspiracy are partially preempted. The Federal Cigarette Labeling and Advertising Act preempts state law claims "based on smoking and health … with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." Pub.L. 91–222, 84 Stat. 87, as amended, 15 U.S.C. § 1331-1340. Based on this statute, in Cipollone v. Liggett Group, Inc. the Supreme Court held that fraudulent concealment claims are preempted by the Federal Cigarette Labelling and Advertising Act, but only to the extent that they do not rely on a duty to disclose facts through channels other than advertising or promotion. Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 527–29, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992). Accordingly, the Plaintiff's claim regarding fraudulent concealment is partially preempted.  It is preempted to the extent it alleges Defendant has a duty to disclose information regarding the health and safety of cigarettes via advertising or promotion.

*Statute of Limitations*

Defendant next argues that Plaintiff's fraud claims are barred by the statute of limitations. "Missouri Revised Statute § 516.120(5) sets a five-year statute of limitations on claims based on fraud. Subsection (5) further provides that a cause of action based on fraud shall be "deemed not to have accrued until the discovery

14

by the aggrieved party, at any time within ten years, of the facts constituting the fraud." Wallace v. R.J. Reynolds Tobacco Co., No. 09-01011-CV-W-REL, 2011 WL 13290652, at *1 (W.D. Mo. Sept. 27, 2011); Mo. Rev. Stat. § 516.120(5). "Missouri courts have consistently interpreted this section to limit the statute of limitations for fraud to a fifteen year maximum." Id. (collecting cases). Defendant argues that the fraud claims are time-barred because they do not allege any fraudulent conduct taking place after September 13, 2005, 15 years prior to the filing date. Plaintiff counters by arguing that the alleged the fraud is ongoing.

Plaintiff's fraudulent concealment claim is time-barred because he does not allege any fraudulent acts occurring after September 13, 2005.  Plaintiff details the history of the tobacco industry's position regarding the health of the cigarettes, but he does not allege any specific concealment or fraudulent statements that occurred from 2005-2020. See Wallace v. R.J. Reynolds Tobacco Co., No. 09-01011-CV-W-REL, 2011 WL 13290652, at *1 (W.D. Mo. Sept. 27, 2011). But his concealment fraud conspiracy claim is not time barred. The Eighth Circuit and Missouri courts have held that conspiracy claims are not subject to the ten-year discovery period like fraud claims. Rather they are governed by Mo. Rev. Stat. §516.120.  Carr v. Aubuchon, 969 F.2d 714, 716 (8th Cir. 1992); May v. AC&S, Inc., 812 F. Supp. 934, 943 (E.D. Mo. 1993); Steinhilber v. Thompson, No. 90-0377-CV-W-9, 1991 WL 219393 at *4 (W.D. Mo. 1991);  Kansas City v. W.R.

Grace & Co., 778 S.W.2d 264, 273 (Mo. Ct. App. 1989), abrogated on other ground by Ellison v. Fry, 437 S.W.3d 762 (Mo. 2014). The limitations in conspiracy cases begin to run upon the "occurrence of the last overt act charged resulting in damage to the plaintiff." Kansas City, 778 S.W.2d at 273. A key element then of the limitations period is damages. Rippe v. Sutter, 292 S.W.2d. 86, 90-91 (Mo. 1956).  Thus,  when the act giving rise to the cause of action does not cause damages immediately, the period of limitations will date from when the resulting damage is sustained and capable of ascertainment. See Kansas City, 778 S.W.2d at 273. Since Plaintiff was not diagnosed with cancer until 2019, the limitations period has not run. Therefore, I will also examine Defendant's argument regarding Fed. R. Civ. P. 9(b) to determine if the fraud claim is also substantively flawed, requiring dismissal of the conspiracy claim. See Wallace, 2011 WL 13290652.

*Federal Rule of Civil Procedure 9(b)*

Plaintiff fails to meet the pleading standards required by Fed. R. Civ. P. 9(b). In order to prevail on his fraudulent concealment claims, Plaintiff must establish silence or concealment of facts that amounted to actual fraud and "a legal duty to disclose on the part of the fraud-feasor arising from a relation of trust, from confidence, inequality of condition, or superior knowledge which is not within the fair and reasonable reach of the other party." Mash v. Brown & Williamson

16

Tobacco Corp., No. 4:03CV0485 TCM, 2004 WL 3316246, at *11 (E.D. Mo. Aug. 26, 2004) (citing VanBooven v. Smull, 938 S.W.2d 324, 328 (Mo. Ct. App. 1997)). "A plaintiff seeking to recover for fraudulent concealment must show all of the following: (1) the fact was not within the fair and reasonable reach of the plaintiff; (2) the plaintiff was unable to discover the concealed information; and (3) plaintiff exercised reasonable diligence." Littlefield v. Edmonds, 172 S.W.3d 903, 907 (Mo. Ct. App. 2005) (citing Keefhaver v. Kimbrell, 58 S.W.3d 54, 60 (Mo. Ct. App. 2001)). Additionally, Plaintiffs' complaint must meet the requirements of Fed. R. Civ. P. 9(b), which mandates a heightened pleading standard for fraud-based claims. See Drobnak v. Andersen Corp., 561 F.3d 778, 783–84 (8th Cir. 2009). To satisfy Fed. R. Civ. P. 9(b)'s requirements the complaint "must allege 'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby.'" Id. "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Id. "To determine whether a party has satisfied Rule 9(b), courts look to 'the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." Corval Constructors, Inc. v. Tesoro Ref. & Mktg. Co., LLC, No. 19CV01277ECTBRT,

17

2019 WL 5260483, at *7 (D. Minn. Oct. 17, 2019) (quoting Payne v. United States, 247 F.2d 481, 486 (8th Cir. 1957) (8th Cir. 1957).

To the extent Plaintiff's fraud claims are not preempted, they fail to satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b). First, although Plaintiff provides a few specific statements made by tobacco companies and the Tobacco Institute, most of the allegations made by Plaintiff do not allege specific fraudulent statements. Plaintiff's complaint also fails to adequately allege that the concealed facts were not within his fair and reasonable reach, that he was unable to discover the concealed information, or that he exercised reasonable diligence. Although Plaintiff states generally that he has heard, seen, and read about the public pronouncements made by cigarette companies and the Tobacco Institute, he fails to indicate when, where or how he heard or saw the statements that allegedly concealed material information. See In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig., 966 F. Supp. 1525 (E.D. Mo. 1997), aff'd sub nom. Briehl v. Gen. Motors Corp., 172 F.3d 623 (8th Cir. 1999). He also failed to identify any specific facts Defendant allegedly concealed. See Wallace v. R.J. Reynolds Tobacco Co., No. 09-01011-CV-W-REL, 2010 WL 11579047, at *3 (W.D. Mo. Aug. 12, 2010).  Finally, Plaintiff failed to indicate that he exercised reasonable diligence or alternatively that the information concealed was not "within the fair and reasonable reach of the Plaintiff." Littlefield, 172 S.W.3d at 907; see also In re

EpiPen Direct Purchaser Litig., No. 20-CV-0827 (ECT/TNL), 2021 WL 147166, at *7 (D. Minn. Jan. 15, 2021); Whittington v. Nordam Grp. Inc., 429 F.3d 986, 996 (10th Cir. 2005).

Since Plaintiff failed to plead his fraud claims with the particularity required under Fed. R. Civ. P. 9(b), both the fraudulent concealment claim and the concealment fraud conspiracy claims will be dismissed.

<u>PUNITIVE DAMAGES</u>

Plaintiff concedes that his claim for punitive damages is premature under Mo. Rev. Stat. § 510.261. Thus, the claim for punitive damages will be stricken.

## CONCLUSION

For the reasons discussed above, I will deny the Defendant's motion to dismiss as to Plaintiff's strict products liability, negligent design, and failure to warn claims (Counts I, II, III), but will grant the motion as to Plaintiff's fraudulent concealment claim and concealment fraud conspiracy claim (Counts III & IV).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss, ECF No. [11] is **DENIED** as to Counts I, II, and III and **GRANTED** as to Counts IV and V.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Relief, ECF No. [39] is **GRANTED**.  A separate order setting a Rule 16 conference will be issued.

                                                       _____
                                                       RODNEY W. SIPPEL
                                                       UNITED STATES DISTRICT JUDGE

Dated this 6th day of August 2021.